**UNITED STATES of America,**

v.

**Jose SANTIAGO, et al., Defendants.**

**No. 00 CR. 237(VM).**

United States District Court,
S.D. New York.

Aug. 12, 2002.

Gary S. Villanueva, Ricco & Villanueva,
New York, NY, for Jose Enrique Saniago.

Hershel Katz, New York, NY, Gerald DiChiara, New York, NY, for Elivs Rodriguez.

Austin V. Campriello, Robinson, Silverman, Pearce, Aronshn & Berman, New York, NY, Kevin McNally, Frankfort, KY, Richard W. Brewster, New York, NY, for Julius Williams.

Robert A. Soloway, Rothman, Schneider, Soloway & Stern, P.C., New York, NY, Jeremy Schneider, Rothman, Schneider, Soloway & Stern P.C., New York, NY, for Rafael Guttierez.

Winston Lee, Law Office of Winston Lee, New York, NY, for Jesus Rivera.

Steven M. Bernstein, New York, NY, for Michael Cofield.

Michael Hurwitz, Hurwitz, Stampur & Roth, New York, NY, for Juaquin Diaz.

Jeremy F. Orden, New York, NY, for Joseph Gomez.

Mitchell A. Golub, Golub & Golub, LLP, New York, NY, Daniel J. Ollen, New York, NY, for Lawrence Cherry.

David Touger, Peluso & Touger, New York, NY, for Juan Quinones.

Mitchell A. Golub, Golub & Golub, LLP, New York, NY, for Julian Marquez.

Stewart Leigh Orden, New York, NY, for Joseph Rini.

Sanford M. Katz, Katz & Weinstein, New York, NY, Berry A. Weinstein, Goldstein, Weinstein & Fuld, New York, NY, Sanford N. Talkin, Talkin Muligrosso & Roberts, New York, NY, for Antonio Rodriguez.

Allan P. Haber, New York, NY, Bruce McIntyre, McIntyre & Pope, New York, NY, for Adrian Agostini.

Roy R. Kulscar, New York, NY, for Jose Baerga.

Aitan D. Goelman, Asst. U.S. Atty., Mary Jo White, U.S. Atty., Crim. Div., New York, NY, for U.S.

### DECISION AND ORDER

MARRERO, District Judge.

After a two-month jury trial, defendants Jose Santiago ("Santiago") and Julius Williams ("Williams") were convicted of several offenses arising out of their participation in a criminal enterprise that the Government referred to as "Thief David's Crew." More specifically, Santiago was convicted of three counts and Williams of two counts of a nine-count indictment. With respect to the remaining counts against defendants Santiago and Williams, as well as all counts against defendant Adrian Agostini ("Agostini"), the jury was unable to reach a unanimous verdict.

At the close of the Government's case-in-chief on February 20, 2002, each defendant moved the Court, pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29"), for a judgment of acquittal on the respective counts charged against him. Each motion was based on an alleged insufficiency of evidence. In a Decision and Order, dated June 3, 2002 (the "June 3 Order"), the Court denied the Rule 29 motions made by each defendant, with the exception of Santiago's motion with respect to Count Nine of the Indictment, which charged that Santiago knowingly used and carried a firearm during and in relation to the narcotics conspiracy charged in Count Three. *See United States v. Santiago, et al.,* 207 F.Supp.2d 129 (S.D.N.Y. June 3, 2002).

On July 2, 2002, Williams filed a motion in which he renewed his application for a judgment of acquittal under Rule 29 and moved the Court to set aside his convictions under Counts, One, Two and Three

of the Indictment. For the reasons discussed below, Williams's motion is denied.

## I. BACKGROUND[1]

According to the evidence presented at trial, from some time in 1994 through March of 2000, Santiago, a/k/a "Thief David," Williams, a/k/a "Stinker," and others were members of a drug gang operating on East 137th Street between Brook and Saint Anns Avenues in the Bronx, New York.[2] As the leader of the gang, Santiago supervised a number of managers and "pitchers," who were responsible for hand-to-hand narcotics transactions on the Block. Those who wished to sell narcotics on Santiago's Block were required to pay him "rent," unless they were members of his gang. Williams and others were the gang's "enforcers," who used violence to protect the gang's narcotics business, collect debts and punish gang members who lost the gang's money or drugs. Other members of the gang routinely carried and used a variety of guns to protect themselves and to maintain control of the narcotics business on the Block. At some point, Santiago, assisted by members of his gang, rented out a space in a building located near 153rd Street and Elton Avenue in the Bronx for the purpose of organizing a nightclub called "The Loft." Santiago and members of the gang used The Loft to earn money and to make connections with other drug dealers. Members of the gang often brought guns to The Loft and other nightclubs to protect themselves in case any conflict arose with other gangs.

Evidence of various acts of violence charged against members of Santiago's gang were presented at trial. For example, in connection with two of the counts on which Williams was convicted, on February 3, 1998 a drug addict named Alan McLeod was stabbed to death in front of 600 East 137th Street in the Bronx, and on April 19, 1998, Francisco Martinez was shot in the street near the Loft after a fight broke out at the club.

## II. DISCUSSION

In his motion, Williams asserts that: (1) the Court should set aside his conviction under Count One because the jury found that the Government had only proved one racketeering act; (2) the Court should set aside his conviction under Count Two because the Court's instructions to the jury "expressly incorporated" the pattern of racketeering element from Count One; (3) the Court should set aside his conviction under Count Three because the jury failed to follow the Court's instructions and did not agree on an amount of narcotics; (4) the Court should enter a judgment of acquittal pursuant to Rule 29 with respect to Racketeering Acts Three and Four and Counts Four and Five; and (5) the Court should set aside the verdicts because the Court's additional charge to the jury, pursuant to *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (the "*Allen* charge"), was improperly coercive. (*See* Defendant Julius Williams's Memorandum of Law in Support of his Post-Trial Motions, dated July 2, 2002 ("Def.'s Br.").)

---

1. In its June 3 Order, the Court fully reviewed the evidence presented at trial with respect to each count charged against each defendant. The Court presumes familiarity with the facts presented in its June 3 Order.

2. This particular section of 137th Street is referred to herein as "137th Street," "Santia-

go's Block," or "the Block." The Block included several buildings within the Milbrook Houses, a public housing development of the New York City Housing authority where Santiago and other gang members lived and operated their drug trade.

As an initial matter, the Court notes that, in its opposition papers, the Government concedes that "the jury's conviction of Williams of racketeering under Count One should be set aside because the jury was able to reach unanimity with regard to only one racketeering act committed by Williams, and conviction under 18 U.S.C. § 1962(c) requires proof of a pattern of racketeering consisting of at least two predicate acts." (*See* Government's Memorandum of Law in Opposition to Defendant Julius Williams' Post-trial Motions, dated July 15, 2002 ("Govt.'s Br."), at 1.) The Court agrees and concludes that the jury's conviction of Williams on Count One must be invalidated. The Court finds no merit in Williams's remaining claims.

## A. *WILLIAMS'S CONVICTION UNDER COUNT TWO*

Williams asserts that the Court "expressly imported [the pattern of racketeering] element of the substantive RICO charge into the conspiracy instruction, and since we know that the jury did not find that the Government had proved that Williams engaged in two racketeering acts, the Court must set aside the jury's verdict on Count Two." (Def.'s Br. at 3.) Williams is incorrect: The Court's instructions to the jury, after producing multiple drafts with input from all counsel, did not "expressly import" Count One's pattern of racketeering element into its instructions on Count Two. Because Williams reads the Court's instructions out of context, it is helpful to review them more fully. Regarding Count One, the Court instructed the jury:

> [I]n order to prove that the particular defendant you are considering is guilty of the RICO charge contained in Count One, the Government must prove beyond a reasonable doubt each of the following elements: first, that the crimi-

nal enterprise described in the Indictment existed; second, that the particular defendant you are considering was associated with or employed by the enterprise; third, that the particular defendant you are considering engaged in a pattern of racketeering activity; fourth, that the particular defendant you are considering unlawfully, willfully, and knowingly conducted or participated in the conduct of the affairs of that enterprise through that pattern of racketeering activity; and fifth, that the enterprise affected interstate or foreign commerce.

(Tr. at 5945–46.) Regarding Count Two, the Court instructed the jury:

> [A] conspiracy to commit a crime is an entirely separate and distinct offense from the substantive crime that is the object of the conspiracy. Count One charges a substantive violation of the RICO statute—that is, it charges Defendants Santiago and Williams with actually having participated in the affairs of an enterprise through a pattern of racketeering activity. Count Two charges Defendants Santiago and Williams with a different crime: conspiring or agreeing to participate in the affairs of an enterprise through a pattern of racketeering activity.
>
> In order to prove a defendant guilty of the crime charged in Count Two, the RICO conspiracy count, the Government must establish beyond a reasonable doubt each of the following elements: first, that the criminal enterprise existed; second, that the enterprise affected interstate or foreign commerce; third, that the particular defendant you are considering was employed by or associated with the enterprise; and fourth, that that defendant knowingly and willfully agreed with at least one other person to participate in the affairs of that

enterprise through a pattern of racketeering activity.

Now, the first three elements of Count Two are exactly the same as the first three elements of Count One, on which I have already instructed you. I shall therefore turn to the fourth element, the agreement. . . .

[W]hat you are being asked to decide in the RICO conspiracy charged in Count Two is this: *Regardless of whether the particular defendant you are considering was involved in any of the specified predicate acts, did he nevertheless know about the activities of the other members of the conspiracy?* Did he know that this whole pattern of activity was going on and did he then knowingly and willfully join in and participate and contribute in some fashion to furthering the goals of the conspiracy?

As I explained earlier, *it is not necessary for the particular defendant or any member of the conspiracy to actually have succeeded in carrying out the specified Racketeering Acts.*

In order to find that the particular defendant you are considering unlawfully, willfully, and knowingly conspired with at least one other person to participate in the conduct of the affairs of the enterprise, you must find the following beyond a reasonable doubt: first, that the conspiracy charged in this count existed; second, that the particular defendant you are considering joined in the conspiracy; and third, that the particular defendant you are considering did so knowingly and willfully and with an awareness of the illegal nature of the objectives of the conspiracy.

(Tr. at 5975–77 (emphasis added).) Although the statement that "the first three elements of Count Two are exactly the same as the first three elements of Count One" is perhaps technically inaccurate in

the elements it references, the Court correctly set forth the four elements the Government must prove beyond a reasonable doubt to support a conviction under Count Two. In this respect, the instructions were very clear that the Government was not required to prove actual acts of racketeering under Count Two. The Court did not specifically direct the jurors to apply the elements of Count One when considering Count Two, but rather separately and independently enumerated the particular elements of each count. It is extremely unlikely that a juror would have "imported" Count One's third element into Count Two when the Court discussed the RICO conspiracy charge much later in the instructions.

Read in context, the Court's instructions on Count Two "correctly comported with the law" and, combined with the jury's verdict, do not provide sufficient grounds for setting aside Williams's conviction under Count Two. *United States v. Jones,* 30 F.3d 276, 283 (2d Cir.) (citing *California v. Brown,* 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987)), *cert. denied,* 513 U.S. 1028, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994); *see United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993) ("'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'") (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

The Court clearly distinguished the two counts: It instructed the jury that Count One charged the defendants "with *actually having participated* in the affairs of an enterprise through a pattern of racketeering activity," and that Count Two charged the defendants with "conspiring or *agreeing to participate* in the affairs of an enterprise through a pattern of racketeering activity." In its description of the elements of Count Two, the Court never stat-

ed that the Government must prove that the defendant had actually participated in a pattern of racketeering activity. To the contrary, the Court stated that "it is not necessary for the particular defendant or any member of the conspiracy to actually have succeeded in carrying out the specified Racketeering Acts."

Furthermore, in the many conferences that the Court held with the parties to revise the instructions and address their objections, Williams neither claimed that the Court's charge was "importing" an extra element into Count Two, nor did he object to the language in question. *See* Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."); *Locascio,* 6 F.3d at 942; *United States v. Tannenbaum,* 934 F.2d 8, 14 (2d Cir.1991). Accordingly, the Court concludes that its instructions on Count Two did not import any additional elements and that the jury's verdict was valid.

## B. *WILLIAMS'S CONVICTION UNDER COUNT THREE*

■ Williams contends that the Court should set aside his conviction for engaging in a narcotics conspiracy as charged in Count Three because "the jury did not agree on the amount of crack that was the object of the [narcotics] conspiracy." (Def.'s Br. at 4.) His argument ignores well-established law that a jury need only make a finding of the amount of narcotics involved for the defendant to be *sentenced* beyond the statutory maximum. Such a finding is not required for a underlying conviction. *See United States v. Thomas,* 274 F.3d 655, 663–64 (2d Cir.2001) ("Our holding that drug quantity is an element of

a § 841 offense does not preclude a district court from considering drug quantity in determining a defendant's relevant conduct for sentencing purposes pursuant to U.S.S.G. § 1B1.3(a) in cases where quantity is *not charged in the indictment or found by the jury,* so long as the sentence does not exceed the statutory maximum.") (emphasis added); *see also United States v. McLean,* 287 F.3d 127, 134 (2d Cir. 2002).

■ In the instant case, the Court explicitly instructed the jury:

> The amount of narcotics that a particular defendant that you are considering allegedly agreed with a co-conspirator to distribute or to possess with intent to distribute *is not an essential element* of the conspiracy . . . . You need only find that the defendant that you are considering agreed with a co-conspirator to distribute or to possess with intent to distribute *any quantity* of narcotics.

(Tr. at 5960 (emphasis added).) The Court later added:

> Let me remind you that you need not consider the total amounts of narcotics, if any, that the evidence establishes to determine whether a particular defendant is guilty or not guilty. Nevertheless, the verdict form which you will be provided will ask you to specify the amounts you find were involved.

(Tr. at 5962.) The Court clearly told the jury that they need not find a narcotics amount to determine whether a particular defendant was guilty or not guilty under Count Three. Accordingly, there is nothing in the record indicating that the jury failed to follow the Court's instructions. The jury found that Williams was guilty of the narcotics conspiracy charged in Count Three, but failed to reach a unanimous determination of the amount involved. Such a failure will prevent the Court from imposing a sentence beyond the statutory

maximum for the offense, but it has no bearing on the validity of Williams's underlying conviction. *See Thomas*, 274 F.3d at 663–64.

### C. WILLIAMS'S RENEWED RULE 29 MOTIONS

 The Court fully addressed Williams's Rule 29 motions with respect to Racketeering Acts Three and Four and Counts Four and Five in its June 3 Order. In his new motion, Williams "reiterates and presses the point here." (Def.'s Br. at 6.) Reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Securities Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). Under Local Rule 6.3, which governs motions for reconsideration, the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision. *See Lichtenberg v. Besicorp Group Inc.*, 28 Fed. Appx. 73, 2002 WL 109483, *1 (2d Cir. Jan. 25, 2002); *SEC v. Ashbury Capital Partners, L.P.*, No. 00 Civ. 7898(RCC), 2001 WL 604044, *1 (S.D.N.Y. May 31, 2001) (citing *AT & T Corp. v. Comty. Network Servs., Inc.*, No. 97 Civ. 316, 2000 WL 1174992, at *1 (S.D.N.Y. Aug.18, 2000) and Local Rule 6.3). Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost motion with additional matters." *See id.* (citing *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A Court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. *See Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 150 (S.D.N.Y.1999); *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (noting that a motion for reconsideration is not an opportunity for the moving party "to argue those issues already considered when a party does not like the way the original motion was resolved.").

 Williams has failed to demonstrate controlling law or factual matters which the court may have overlooked and that might reasonably be expected to alter the court's decision. As a result Williams's renewed Rule 29 motions fail for the reasons set out in the Court's June 3 Order. *See Santiago*, 207 F.Supp.2d at 135–144.

### D. THE COURT'S ALLEN CHARGE

Williams asserts that the Court should set aside his convictions because the Court's *Allen* charge was improperly coercive. (Def.'s Br. at 13.) The Court disagrees. The use of an *Allen* charge has "long been sanctioned by the Supreme Court." *United States v. Melendez*, 60 F.3d 41, 51 (2d Cir.1995); *see United States v. Fermin*, 32 F.3d 674 680 (2d Cir.1994) ("We have consistently approved of the use of an *Allen* charge in the face of an apparent deadlock as long as such a charge is carefully crafted to avoid coercing jurors."). The Second Circuit has affirmed convictions with *Allen* charges under circumstances that were far more potentially coercive and with *Allen* charges that contained language much more forceful than that which this Court employed in the instant case. *See, e.g., United States v. Ruggiero*, 928 F.2d 1289, 1298 (2d Cir.1991) (approving of multiple *Allen* charges given in response to continued jury deadlock); *United States v. Miller*, 478 F.2d 1315, 1320 (2d Cir.1973) ("The '*Allen*-charge' variation, that 'if much the larger number of jurors would

hold one way, a dissenting juror should consider whether his or her position was a reasonable one,' when read in context was not unduly coercive; other statements delivered at the same time reaffirmed the need for each juror to vote his conscience and in no way to violate 'a conviction which he conscientiously holds predicated upon the weight and effect of the evidence.' ") (citing *United States v. Jennings*, 471 F.2d 1310, 1314 (2d Cir. 1973)).

■ In the instant case, the jury had deliberated for approximately two days when they provided the Court with a note, stating that they were "hopelessly deadlocked and further deliberations are futile." (Tr. 6098.) The Court's charge quoted directly from the Supreme Court's opinion in *Allen* and emphasized that "no juror must vote for any verdict unless, after full discussion and consideration of the issues and exchange of views, it does represent his or her considered judgment." (Tr. at 6130.) The Court further instructed:

> Do not ever change your mind just because other jurors see things differently or just to get the case over with. As I told you before and, [ ] in the end, your vote must be exactly that, your vote. As important as it is [ ] for you to reach unanimous agreement, it is just as important that you do so honestly and in good conscience.

(Tr. at 6132.) The Court used such language to avoid coercing jurors and there is no indication that the jurors were, in fact, coerced. After the Court gave its *Allen* charge, the jury continued to deliberate for three days, requesting copies of numerous portions of the trial transcript and exhibits. The jury returned a partial verdict in which it convicted Williams and Santiago on Counts One, Two and Three and stated that it was unable to reach a unanimous agreement with respect to all other counts for all defendants. The verdict suggests that the jury made a concerted effort to reach unanimity and were unable to do so on the majority of charges at issue. Such a result would have been unlikely if any juror or jurors had felt coerced. In any event, the Court carefully considered the objections of defense counsel when it drafted the modified *Allen* charge that it ultimately gave the jury. The Court concludes that the circumstances under which the it gave the *Allen* charge and the language that it used in the charge did not improperly coerce the jury.

## III. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that defendant Williams's motion to set aside his guilty verdict on Count One is GRANTED; and it is further

**ORDERED** that defendant Williams's motion to set aside his guilty verdict and for a judgment of acquittal with respect to all other counts is DENIED; and it is further

**ORDERED** that, at the request of the United States Probation office, the sentencing of Defendants Williams and Santiago is re-scheduled for October 11, 2002 at 3 p.m.

**SO ORDERED.**