**UNITED STATES of America,**
**Plaintiff,**

v.

**Adrian AGOSTINI, Defendant.**

**No. S1700237VM.**

United States District Court,
S.D. New York.

April 13, 2005.

Michael F. Bachner, Barry Krinsky, Brooklyn, NY, for Defendant.

Aitan D. Goelman, Asst. U.S. Atty., Mary Jo White, U.S. Atty., New York City, for U.S.

### Statement of the Court Regarding the Sentencing of Adrian Agostini

MARRERO, District Judge.

The Court acknowledges that the decision by the Supreme Court in *United States v. Booker*, 543 U.S. ——, 125 S.Ct.

738, 160 L.Ed.2d 621 (2005), has changed the legal landscape in which federal defendants are sentenced. Although no longer bound by the mandatory constraints of the Sentencing Guidelines, this Court "must consult those Guidelines and take them into account when sentencing." 125 S.Ct. at 767 (Breyer, J.). Therefore, the Court has considered the findings of fact stated in the Presentence Report ("PSR"), as well as the Guidelines analysis and recommendations contained therein. The Court has weighed this information along with the factors listed in 18 U.S.C. § 3553(a) in coming to its final sentencing decision.

The sentencing before the Court today is not an easy one, and the Court has devoted considerable resources to studying the record and reviewing all correspondence related to the matter in order to ensure that it imposes a fair and just sentence on Adrian Agostini ("Mr. Agostini" or "defendant"). The parties raised numerous objections and requested myriad enhancements and departures, each of which must be dealt with in turn.

As a preliminary matter, the Court notes that the PSR prepared for this sentencing used the version of the Sentencing Guidelines in effect starting November 1, 2003. The Court in its analysis used the Guidelines that are currently in effect, which became effective on November 1, 2004, in accordance with U.S.S.G. § 1B1.11. The use of the most recent version of the Guidelines does not violate the *Ex Post Facto* Clause of the Constitution, as the Court's Guidelines calculation would be same even if the Court utilized the Guidelines in effect at the time of the commission of Mr. Agostini's offenses, those effective November 1, 2000.[1]

---

**1.** All provisions considered by the Court concerning its calculation of the offense level for Count Two are the same in the 2000 and 2004 versions of the Guidelines. As to Count One, the provisions are slightly different, but the final offense level would be the same under both versions.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

■ The first issue the Court must resolve is defendant's motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Although defendant withdrew his Rule 29 motion as being untimely by letter to the Court dated January 25, 2005, he suggested that the Court might still address the issues that he raised under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court has reviewed defendant's submission on this issue and finds that there exists no procedural means by which the Court could address any potential question created by the *Crawford* decision at this stage in the case.[2] As the Supreme Court stated in *Carlisle v. United States*, 517 U.S. 416, 421, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), "[t]here is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error." Defendant did not suggest, nor could the Court identify, an alternative procedural basis on which it could review these issues. The Court, therefore, denies Mr. Agostini's motion for a judgment of acquittal based on the Supreme Court's holding in *Crawford*.

## II. ANALYSIS OF SENTENCE UNDER THE SENTENCING GUIDELINES

### A. Count Two: Narcotics Conspiracy

Next, the Court will consider the range of sentence that application of the Sentencing Guidelines would produce and recommend. To this end, the Court will first address the proper offense level associated with Mr. Agostini's narcotics conviction. Mr. Agostini argues that his sentence should be based solely on the drug quantity found by the jury in its verdict, five (5) grams of cocaine base, or crack, which corresponds to an offense level of twenty-four (24). Both the PSR and the Government advocate for the application of a base offense level of thirty-eight (38) under the Guidelines. This offense level is calculated by holding Mr. Agostini responsible for various quantities of crack and heroin in excess of that found by the jury in its verdict.

■ As a preliminary matter, the Court finds that Mr. Agostini can be held liable for relevant conduct under U.S.S.G. § 1B1.3 committed by his co-conspirators, even if he was acquitted by the jury of such conduct, such as the conspiracy to distribute heroin. The Supreme Court held in *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), that a sentencing court may consider conduct of which a defendant has been acquit-

---

**2.** The Court notes that, even if a procedural means for review existed, there are no sufficiently meritorious grounds to grant a judgment of acquittal in this case. The allegedly offending plea allocutions of co-conspirators that were admitted by the Court were offered for the limited purpose of establishing the existence of the narcotics conspiracy in which the members of Thief David's Crew were engaged, and the jury was so instructed. Even if it were found that, under *Crawford*, the admission of such plea allocutions violated Mr. Agostini's right to confront witnesses against him, this violation was harmless. The Second Circuit, relying on *Crawford*, stated in *United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004), that "[a]n error in the admission of evidence may be deemed harmless only if it is highly probable that the error did not contribute to the verdict." *Id.* at 79 (internal quotations omitted). Given the extensive testimonial evidence from such witnesses as Michael Cofield and Elvis Rodriguez as to the existence of the narcotics conspiracy charged in this case, it is highly improbable that the plea allocutions contributed to the verdict against Mr. Agostini as to this element of the offense.

ted when imposing a sentence, as long as that conduct has been proved by a preponderance of the evidence. The Supreme Court deferred the question of what standard of proof should be used for cases where such acquitted conduct, if taken into account, would dramatically increase the defendant's sentence, but did imply that in such cases, a standard of clear and convincing evidence should apply.

The Supreme Court's decision in *Booker* did not alter the court's ability to enhance a defendant's sentence on the basis of acquitted conduct. In *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir.2005), the Second Circuit stated that "although the [Supreme] Court in the Substantive Opinion [of *Booker*] prohibits a sentencing judge from finding any facts that enhanced a Guidelines sentence above the range that is based solely on facts found by the jury in its verdict or admitted by the defendant, the Court in its Remedy Opinion contemplates that, with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection. Thus, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." The Court, in sentencing, is thus not bound by the jury's determination of the drug quantity attributable to Mr. Agostini, but can look to the totality of the circumstances of the crime and the conspiracy under both U.S.S.G. § 1B1.3 and 18 U.S.C. § 3553(a)(1).

To determine what actions of the conspiracy of which Mr. Agostini was a part are relevant conduct with respect to Mr. Agostini's sentence, "the court must first determine the scope of the criminal activity [Mr. Agostini] agreed to jointly undertake." U.S.S.G. § 1B1.3 comment. n. 2.

The Court finds that clear and convincing evidence produced at trial established that Mr. Agostini offered his car as a "mobile office" for Thief David's Crew and was present when managers of the Crew were in his car discussing all aspects of their drug deals, including counting money from their heroin operations; that Mr. Agostini was a willing courier for the Crew, transporting drugs, drug money and weapons when asked; that Mr. Agostini drove members of the Crew, including Michael Cofield, to complete important drug-related tasks, such as delivering drug money and purchasing narcotics; and that Mr. Agostini generally sought to ingratiate himself with the leader and managers of the Crew in order to become more centrally involved in the Crew's operations. This evidence supports a finding that the scope of Mr. Agostini's involvement in the conspiracy was fairly broad, and included the Crew's heroin operations.

■ The Court found in earlier decisions in the long history of this case that the conspiracy involved at least one (1) kilogram of heroin. *See, e.g., United States v. Santiago*, 207 F.Supp.2d 129, 138 (S.D.N.Y.2002). The Court must determine whether this amount was reasonably foreseeable to Mr. Agostini in connection with the conspiracy as it pertained to him. U.S.S.G. § 1B1.3 comment. n. 2. The Court finds that Thief David's Crew's heroin activity, even if not directly transacted by Mr. Agostini, was reasonably foreseeable to him given that the leader of the gang, Jose Santiago, and other managers of the Crew discussed their heroin business in front of Mr. Agostini in his car and involved him in various aspects of the heroin business, including having him act as a courier for drugs and drug money. In this regard, the Court notes that the jury was given a conscious avoidance charge that could very well have served as the basis

for Mr. Agostini's conviction on the drug conspiracy charge. The Court will hold Mr. Agostini responsible for the one (1) kilogram of heroin that has previously been found by the Court to have been involved in this conspiracy.

Mr. Agostini's base offense level for Count Two is, therefore, thirty-two (32) according to Section 2D1.1(c) of the Guidelines.

■ The Court denies Mr. Agostini's motion for a downward departure under Section 5K2.0 because his offense level was increased as a result of acquitted conduct, as under the Second Circuit's decision in *United States v. Concepcion,* 983 F.2d 369 (2d Cir.1992). The Court finds that a downward departure on this basis is unwarranted. There was ample clear and convincing evidence that Mr. Agostini was involved in Thief David's Crew's heroin business, and that he was also dealing significant amounts of crack cocaine as a member of the Asesino Crime Family, which was the name by which the gang of younger members of the Crew styled themselves. The Court finds that this base offense level, although determined above on the basis of the heroin business conducted by the Crew, could alternatively be supported by looking at the total amount of crack involved in the conspiracy, which the Court has previously determined to be fifty (50) grams and which Mr. Agostini had a part in dealing as a member of the conspiracy involving the Asesinos, or in combining both the Crew's heroin and crack quantities. Thus, there is ample support for applying this base offense level to Mr. Agostini.

1. **Enhancement for Possession of Firearms**

■ Both the Government and the PSR recommend an enhancement to the base offense level on the narcotics charge for possession of firearms in furtherance of

the narcotics conspiracy pursuant to U.S.S.G. § 2D1.1(b). Application Note 3 to this Section states that the enhancement for weapon possession "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Based on the testimony and evidence presented at Mr. Agostini's trial, the Court finds that the application of this enhancement is appropriate. The evidence established that Mr. Agostini brought at least one gun to the block controlled by Thief David's Crew. That gun was located in the car that was used by the Crew as its "mobile office" for its narcotics business. Mr. Agostini brought a gun to Jose Santiago, upon Santiago's request, at a club where members of the gang were involved in a fight. Mr. Agostini also transported guns on behalf of the Crew in other instances when asked to do so. Upon this evidence, the Court finds no basis to hold that it is "clearly improbable" that the guns possessed by Mr. Agostini on various occasions were connected with the narcotics conspiracy.

The Court, therefore, concludes that there are sufficient grounds to enhance Mr. Agostini's offense level by two (2) levels on the narcotics charge, giving him an offense level of thirty-four (34).

2. **Enhancement for Obstruction of Justice**

■ The Government has also made a motion to enhance Mr. Agostini's offense level for obstruction of justice under Section 3C1.1. In light of the circumstances in this case, the Court grants the Government's motion for a two-level enhancement to the applicable offense level based on the defendant's obstruction of justice. Under Section 3C1.1 of the Sentencing Guidelines, a two-level enhancement is warranted when the defendant willfully obstructed

or impeded the administration of justice during the course of the prosecution, and the obstructive conduct related to the defendant's offense or conviction. The commentary to this Section makes clear that this enhancement is not intended to punish a defendant for the exercise of a constitutional right, and, as such, the mere fact that the defendant took the stand in his own defense and was ultimately convicted is insufficient to conclude that the defendant obstructed justice. In *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court upheld the constitutionality of such an enhancement and mandated that district courts make specific factual findings that would support a perjury charge before applying it. With regard to these findings, the Second Circuit in *United States v. Zagari,* 111 F.3d 307 (2d Cir. 1997), held that in order to apply an enhancement under Section 3C1.1, the sentencing court must first find that the defendant willfully and materially committed perjury, which is defined as the intentional giving of false testimony as to a material matter. *Id.* at 328–29.

The Court finds that these elements are present in this case and thus, under the Guidelines as currently in effect, an enhancement under 3C1.1 would be warranted. Specifically, the Court finds that the defendant took the stand and swore that he would tell the truth. He then proceeded to deny any involvement with the activities of the drug gang with which he was associated; he denied having played any role in any drug activities; he described the Asesinos as purely a football team; and he denied having actually assaulted his victim, Paul Crowder, asserting that the person other witnesses pointed to as Mr. Agostini on a video tape of the incident in fact was not he, despite the abundance of clear and convincing evidence identifying that perpetrator as Mr. Agostini, including the fact that the perpetrator was wearing a distinctive jacket similar to one Mr. Agostini was known to wear, and in fact was shown on videotapes wearing at other times. The jury must have found Mr. Agostini's testimony to be false when it convicted Mr. Agostini of being a member of a narcotics conspiracy and of having assaulted Mr. Crowder. *See United States v. Bonds,* 933 F.2d 152, 155 (2d Cir.1991) ("Where, as here, the defendant's testimony relates to an essential element of his offense, such as his state of mind or his participation in the acts charged in the indictment, the judgment of conviction necessarily constitutes a finding that the contested testimony was false."). The Court similarly finds Mr. Agostini's testimony as to these matters to be willfully and intentionally false.

Mr. Agostini also showed a lack of credibility as to his testimony in general. For example, on one occasion, Mr. Agostini is caught on one police surveillance tape driving off in his car with Santiago and other Crew members at a peak traffic hour on a rainy day, from the block of the Crew's operations. He explained that his purpose was to drive to a northern part of the borough to drop a girlfriend off at home— a person he claimed was in the back seat but who was never seen on the tape getting into the car. Yet in the very next surveillance tape, recorded just twelve minutes later, Mr. Agostini and members of the Crew are shown back on the block. Mr. Agostini asserted that he made the round trip of several miles driving on a major highway in excess of ninety (90) miles per hour. The Court finds such testimony implausible. Considering Mr. Agostini's testimony as a whole, the Court finds that Mr. Agostini intentionally testified falsely at least as to the matters here mentioned, and as such willfully committed perjury as to material facts. The Court therefore finds appropriate the application of the two-level Guidelines enhancement

under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice.[3]

Under the Guidelines, Mr. Agostini's final adjusted offense level for Count Two, the narcotics charge, is thus thirty-six (36).

## B. Count One: Aggravated Assault

The Court now turns to the offense level for Count One. The Guidelines state that the offense level for a violation of 18 U.S.C. § 1959 is found in Guidelines Section 2E1.3, which provides for an offense level of the greater of either (i) twelve (12) or (ii) the offense level for the underlying crime of racketeering activity. The underlying crime in this case, aggravated assault, is addressed in Section 2A2.2, which provides for a base offense level of fourteen (14). As this offense level is greater than twelve, the Court finds that Mr. Agostini's base offense level as to Count One for Aggravated Assault in Aid of Racketeering is fourteen (14).

The Court finds that several enhancements based on the specific offense characteristics are applicable. First, in accordance with Section 2A2.2(b)(2)(B), the offense level should be increased four (4) levels because a dangerous weapon was used in the commission of the assault. In this case, Mr. Agostini slashed Mr. Crowder's throat using a knife. Second, in accordance with Section 2A2.2(b)(3)(C), the offense level should be further increased by seven (7) levels because the victim suffered life-threatening bodily injury. When Mr. Agostini slashed Mr. Crowder's throat, he severed Mr. Crowder's carotid artery, resulting in severe blood loss which could have, but for the grace of a passerby, led to Mr. Crowder's untimely demise. The wounds also left permanent scars on the victim. These adjustments would lead to a combined increase in the offense level of eleven (11), however, Section 2A2.2(b)(3) provides that enhancements for specific offense characteristics under Subsections

**3.** The Court notes that the Supreme Court's decisions in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Booker* raise as a potential issue the continued constitutional legitimacy of the enhanced punishment for obstruction of justice under the Guidelines, § 3C1.1, as this enhancement relies on a judge determining the purpose, intent and credibility of the defendant's testimony, or other conduct, without the jury ever having expressly made any factual findings on that issue. The Court also recognizes that there may be valid concern that the application of this enhancement presents defendants who choose to take the stand in their own defense with a catch–22: when a defendant takes the stand, he knows that the Government on cross-examination will likely ask him questions that bear upon whether he committed the charged crime, to answer which he either must incriminate himself, or deny involvement in the conduct and open himself up to an enhancement in his sentence for obstruction of justice. The Court acknowledges that "a defendant's right to testify does not include a right to commit perjury," *Dunnigan*, 507 U.S. at 96, 113 S.Ct. 1111, and that the Supreme Court's requirement that a district court make specific findings concerning any alleged perjury prior to imposing the sentencing enhancement provide some protection against unwarranted or automatic enhancements in defendants' sentences for their having taken the stand in their own defense, *see id.* at 94–95, 113 S.Ct. 1111. However, it also bears noting that this issue has not been squarely addressed by the Supreme Court after *Booker*, and that the majority and dissenting opinions in *Blakely* comment regarding a sentence enhancement based upon a judicial finding of perjury in terms that arguably cast some doubt on the continued viability of that Guideline. *See* 124 S.Ct. at 2539 n. 11 ("Why perjury during trial should be grounds for a judicial sentence enhancement on the underlying offense, rather than an entirely separate offense to be found by a jury beyond a reasonable doubt (as it has been for centuries . . .), is unclear."); *see also id.* at 2646 (O'Connor, J., dissenting). Nonetheless, as the Second Circuit has continued to uphold the application of this enhancement post-*Booker*, *see, e.g.*, *United States v. Duque*, 123 Fed.Appx. 447 (2d Cir.2005), the Court has applied it in this case.

(b)(2) and (b)(3) cannot increase the base offense level by more than ten (10) levels. Therefore, the Court will enhance Mr. Agostini's base offense level by only ten (10) levels, giving him an adjusted offense level of twenty-four (24) on Count One for Aggravated Assault.

### 1. Enhancement for Motivation by a "Thing of Value"

█ The Court declines to accept the Government's and the PSR's recommendation to apply the two point enhancement under Subsection (b)(4) of Section 2A2.2, which may be employed if the assault was motivated by a payment or offer of money or other thing of value. The Government argues that Mr. Agostini stabbed Mr. Crowder to maintain and increase his position in Thief David's Crew, and that this position was a "thing of value" such that the enhancement should apply. This argument seeks to bootstrap the crime itself, an element of which is that the crime was committed to maintain or increase Mr. Agostini's position within the criminal enterprise, into a higher offense level than the Guidelines originally contemplated. The Guidelines state that the crime of violating 18 U.S.C. § 1959 is to be punished in accordance with the sentence the Guidelines indicate for the underlying crime, which presumably embodies the motivation for the conduct that the Government seeks to qualify as a distinct ground for enhanced punishment. Nowhere do the Guidelines state that this crime in itself, without the presence of additional factors, warrants the application of an additional enhancement for conduct that, under the statutory definition of the crime, constitutes one of the substantive elements of the offense. The Court finds such punitive double-dipping unwarranted in sentencing for this offense.

Furthermore, the Government's argument that the enhancement applies in this case ignores the plain language of the Guidelines, which state that the enhancement applies only where the crime is motivated by a *payment or offer* of money or a thing of value. The Government fails to identify any actual *payment* or *offer* of money or a thing of value made by any particular person to Mr. Agostini in return for his assaulting Mr. Crowder. In fact, the evidence presented at trial showed that Santiago, presumably the person who, under the Government's theory, Mr. Agostini sought to impress, was displeased by Mr. Agostini's actions, and was concerned that Mr. Agostini's behavior might bring unwanted police attention to the Crew's drug operations on the block. Therefore, the Court finds that this enhancement does not apply in Mr. Agostini's case. *See United States v. Kwong,* 877 F.Supp. 96, 101 (E.D.N.Y.1995) (finding that a similar enhancement under Section 2A2.1 was not applicable where, although the defendant committed the attempted murder of an Assistant United States Attorney in a bizarre effort to curry favor with law enforcement authorities and to revive his relationship as a government cooperator for the purpose of obtaining a more favorable sentence on his pending charges, "the mere expectation of financial gain does not amount to either 'the offer or the receipt of anything of pecuniary value.' ").

However, as stated previously, the Court will apply the two level enhancement for obstruction of justice under Guidelines Section 3C1.1, and, therefore, Mr. Agostini's final adjusted offense level for Count One is twenty-six (26).

### C. *Combined Offense Level*

The Court must now determine, in accordance with Section 3D1.4, the combined offense level that the Guidelines would yield for Mr. Agostini's offense. The offense level for Count Two is the highest of the two offense levels, at thirty-six (36).

Because the offense level for Count One is more than nine (9) levels less serious than the offense level for Count Two, Mr. Agostini's combined adjusted offense level is thirty-six (36). As noted in Guideline § 3D1.4(c), however, the fact that the offense level for Count One did not increase the total offense level for Mr. Agostini would warrant this Court sentencing Mr. Agostini at the higher end of the sentencing range for the applicable offense level.

### D. *Criminal History Category*

In regard to Mr. Agostini's criminal history, the Court declines to adopt the Government's argument that Mr. Agostini's criminal history category fails to adequately reflect the seriousness of his previous criminal record. *See* U.S.S.G. § 4A1.3(a). Prior to his conviction in this case, despite evidence of Mr. Agostini's involvement in several fights and violent misconduct, Mr. Agostini had been convicted of relatively minor crimes, neither of which involved significant sentences of incarceration. While Mr. Agostini was on probation at the time he committed the instant offenses, that fact has already been considered in determining his criminal history category under the Guidelines. *See* U.S.S.G. § 4A1.1(d). His Guidelines criminal history category of II, on the facts before the Court, is appropriate.

### E. *Sentence Under the Sentencing Guidelines*

Accordingly, on the basis of the preceding analysis, the Court concludes that an application of the Guidelines in this case would produce a criminal history category of II(two) and an offense level of 36 (thirty-six). Under the Sentencing Guidelines, the sentencing range for such an offense level and criminal history category is 210 to 262 months imprisonment. In light of all of the considerations stated above, a sentence at the top of this range, of two hundred sixty two (262) months, would be appropriate.

The Court finds that an upward departure from the recommended Guidelines range under § 5K2.0 of thirty-eight (38) months would be appropriate in this case because Mr. Agostini's crimes encompass circumstances present to a degree not adequately taken into consideration in the Guidelines. *See* U.S.S.G. § 5K2.0 comment. n.3(B). The Court finds that the heinous nature of Mr. Agostini's assault on Mr. Crowder, including that had a passer-by not swiftly come to Mr. Crowder's aid, Mr. Agostini's conduct would have entailed a homicide and not an assault; that Mr. Crowder had been chased into a vestibule after being slashed at by Mr. Agostini and others on the street; and that Mr. Agostini apparently believed he had committed a homicide and proudly boasted of that possibility to his fellow gang members reflect facts not adequately taken into consideration in the Guidelines provision for Aggravated Assault. *See* U.S.S.G. § 5K2.8 ("Extreme Conduct"). In addition, Mr. Agostini has shown insufficient remorse for the victim of his crimes and has continued to deny involvement in any of these criminal activities. Considering these facts, and in light of the evidence presented at trial of Mr. Agostini's past involvement in uncharged violent conduct, the Court finds such an upward adjustment warranted under § 5K2.0.

### III. SENTENCE UNDER 18 U.S.C. § 3553(A)

In accordance with precedent stated in *Booker* and *Crosby*, in determining the sentence to impose for any conviction, the Court must consider this Guidelines range and weigh it along with the other factors stated in Title 18, United States Code, Section 3553(a). Having considered the Guidelines computation

and independent of the considerations described in the analysis above that produced the Guidelines range and upward departure, the Court finds, in accordance with 18 U.S.C. § 3553(a), that a sentence higher than that yielded by the Guidelines range would be warranted in this case to adequately meet the sentencing goals of punishment, deterrence, and rehabilitation appropriate to this defendant and the extreme gravity of the crimes of which he was convicted.

First, the nature and circumstances of the offense of which Mr. Agostini was convicted were particularly heinous and of exceptional depravity. The evidence showed that the assault on Paul Crowder occurred merely hours after Mr. Agostini's return from the hospital where his first child had just been born. Mr. Agostini does not deny that he and Mr. Crowder engaged in a fight at that time. An individual who was wearing a jacket similar to one frequently worn by Mr. Agostini, and who was identified as Mr. Agostini by several witnesses on the video of the assault on Mr. Crowder, slashed Mr. Crowder's throat. Although Mr. Agostini claimed that he was not the individual who slashed Mr. Crowder's throat, the Court finds this testimony to have been incredible and intentionally false. The Court also notes that had a passerby not swiftly come to Mr. Crowder's aid, Mr. Crowder's injuries were such that he may have died, and Mr. Agostini would have been responsible for murder as opposed to aggravated assault. In fact, trial testimony indicated that following the incident, at the after-hours club where Mr. Agostini and other members of the gang went to link up with Santiago, Mr. Agostini reported his role in the assault to Santiago in boastful terms—specifically that he "caught recreation" and had "opened him up like a pig" and "bodied him," referring to Mr. Crowder, statements which suggest Mr. Agostini's belief that he had actually killed the victim of the gang attack. (*See* Tr. at 1226–30.) Additionally, the gangs of which Mr. Agostini was a member, including the Asesinos and the Crew, were exceptionally violent, were involved in homicide and other aggravated assaults, and were engaged in a large-scale drug operation spanning several years. The evidence showed that, far from being an inactive or low-level member, Mr. Agostini regularly interacted with the leaders of the Crew, and aspired to increase his position within the gang.

Next, the history and characteristics of Mr. Agostini warrant a significant sentence for the above described crimes. Although Mr. Agostini's criminal history appears on paper to be relatively minor, ample evidence presented at trial established that Mr. Agostini was involved in numerous violent fights and narcotics transactions of his own outside of his involvement with the Crew. Furthermore, Mr. Agostini has shown little remorse for the victim of his crime, and continued throughout the trials and to this day to deny any involvement in the activities of which he was found guilty, a position that this Court finds untenable on the basis of the evidence presented in this case. Such a history displays a lack of respect for the law sufficient to justify a significant term of imprisonment for Mr. Agostini's crimes.

These circumstances also weigh into the Court's consideration of the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and the] need to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)—(C). Additionally, the Court has looked at the sentences it ordered for similar defendants, including the other defendants involved in this conspira-

cy, in order to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Weighing these factors with the sentence provided as previously described under the Sentencing Guidelines and any relevant policy statements contained therein, the Court concludes that a final sentence for Mr. Agostini of three hundred (300) months, which is hereby imposed pursuant to 18 U.S.C. § 3553(a) after consideration of the range the Guidelines recommend, is "reasonable" under *Booker*, and, in accordance with § 3553(a), "sufficient, but not greater than necessary" the meet the purposes of sentencing.

The Court must now apportion this sentence to comply with the relevant statutory maximum sentences for each Count. The statutory guidelines for Count One provide for a maximum term of imprisonment of twenty years under the racketeering charge, pursuant to 18 U.S.C. §§ 1962 and 1963(a), and a maximum term of imprisonment on Count Two of twenty years pursuant to 21 U.S.C. § 841(b)(1)(C). The Court therefore, taking account of these considerations and its sentence pursuant to 18 U.S.C. § 3553(a), apportions the total sentence as follows: one hundred eighty (180) months under Count One, and one hundred twenty (120) months under Count Two.

These sentences can be imposed consecutively pursuant to U.S.S.G. § 5G1.2(d), which mandates that where the applicable sentencing range under the Guidelines is higher than the statutory maximum of one of the counts of conviction, multiple counts of conviction are to run consecutively to the extent necessary to produce a combined sentence equal to the total punishment, and 18 U.S.C. § 3584(a). The Second Circuit in *United States v. White*, 240 F.3d 127 (2d Cir.2001) upheld imposition of consecutive sentences even if the enhanced sentence was reached based on facts determined by the judge by a preponderance of the evidence. As the Second Circuit noted in *White*, there is "no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *Id.* at 135. As a result, this Court will run Mr. Agostini's sentences consecutively, and consequently, the combined sentence is set at three hundred (300) months imprisonment.

### *DECISION AND ORDER*

On October 1, 2003, a jury found Adrian Agostini ("Agostini") guilty of Counts One and Two of superceding indictment number S17 00 Crim. 0237. Count One charged Agostini with Aggravated Assault in Aid of Racketeering in violation of 18 U.S.C. §§ 1959(a)(3) and 2. Count Two charged Agostini with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, fifty grams and more of cocaine base, in a form commonly known as crack, and marijuana, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A), (b)(1)(D), and 846. With respect to Count Two, the jury acquitted Agostini of the heroin distribution component and found him guilty of the distribution of less than five grams of cocaine base, or crack.

The Court has issued numerous decisions during the course of the two trials concerning the facts at issue in this case, *see United States v. Santiago*, 214 F.Supp.2d 421 (S.D.N.Y.2002); *United States v. Santiago*, 207 F.Supp.2d 129 (S.D.N.Y.2002); *United States v. Santiago*, 199 F.Supp.2d 101 (S.D.N.Y.2002); *United States v. Santiago*, 185 F.Supp.2d 287 (S.D.N.Y.2002); *United States v. Santiago*, 174 F.Supp.2d 16 (S.D.N.Y.2001), and the Court herein incorporates the factual recitations in those decisions.

For the reasons stated on the record at the sentencing of Agostini before the

Court on April 12, 2005, as further elaborated upon in the Statement of the Court which is attached hereto and incorporated herein, Agostini's motion for a judgment of acquittal in this case is denied. The Court additionally finds that, under the United States Sentencing Guidelines, Agostini's total adjusted offense level for the two Counts on which he was found guilty is thirty-six (36) and his criminal history category is II. The Court sentenced Agostini to three hundred (300) months imprisonment upon consideration of the factors listed in 18 U.S.C. § 3553(a).

Accordingly, it is hereby **ORDERED** that Adrian Agostini's Motion for a Judgment of Acquittal is DENIED.

**SO ORDERED.**